

ENTERED
06/24/2016

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| BURGHARDT SMITH | § | CASE NO: 15-35436 |
| Debtor(s) | § | |
| | § | CHAPTER 13 |

### MEMORANDUM OPINION

The state court receiver's authority over and ownership of the property located at 6435 Bright Bloom Lane has been terminated pursuant to 11 U.S.C. § 543. Debtor Burghardt Smith must sell the property, subject to the IRS's tax lien. The proceeds are to be split equally between Smith and Cassandra Myers. The real estate broker Wanda VanWilts is ordered to provide copies of any offers to the Chapter 13 Trustee. If the house is not sold within 180-days, the asking price must be reduced by 10% every 60 days thereafter until it is sold.

### Background

Smith and his wife Cassandra Myers divorced in 2006. The final divorce decree ordered that their marital residence would be sold and the net proceeds divided equally between the parties. (ECF No. 75-1 at 7-8). However, the couple did not sell the house and Smith continued to reside on the property. In 2007, Myers and Smith signed a document titled "Quitclaim," in which Myers sought to quitclaim her interest in the property in exchange for a $5,000.00 payment. (ECF No. 75-4 at 3). The quitclaim stated:

> For the Consideration, Grantor quitclaims to Grantee all of Grantor's right, title, and interest in and to the Property, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Neither Grantor nor Grantor's heirs, successors, or assigns will have, claim, or demand any right or title to the Property or any part of it.

*Id.* at 3.

In 2012, Myers moved to enforce the divorce decree and sell the house. Smith responded that he was not required to sell the house based on the 2007 Quitclaim Deed. The trial court held an evidentiary hearing on the motion to enforce. On August 6, 2012, the trial court signed an order finding Smith "guilty" of not complying with the terms of the divorce decree. *Id.* at 4. Nevertheless, Smith still did not sell the house. In April 2013, the trial court appointed a receiver to "enter into any real estate brokerage agreement necessary to comply" with the final divorce decree, sell the house, and divide the proceeds from the sale equally between Smith and Myers. *Id.*

Smith appealed the appointment of the receiver. On July 1, 2014, the Texas Court of Appeals affirmed the appointment based on the insufficient record provided by Smith. *Id.* at 1-2. In September of 2015, the receiver filed a request in the 245th District Court, Harris County, Texas for an order requiring Smith to vacate the property. (ECF No. 45-5). As of October 12, 2015, the receiver had not taken possession, custody, or control of the property. (ECF No. 77 at 1).

Smith filed for chapter 13 bankruptcy on October 13, 2015. (ECF No. 1). The IRS filed a proof of claim for its federal tax lien on the property in question, listing a $41,973.51 secured claim, unsecured priority claim of $10,449.06, and general unsecured claim of $29,412.82. (ECF No. 76 at 2). On April 13, 2016, the receiver filed a motion for relief from stay seeking to proceed with the sale of the property. (ECF No. 63). At an April 26, 2016, hearing on the lift stay motion, the Court requested briefing on three issues:

1. Did § 543 of the Bankruptcy Code eliminate the receivership over the property created by the 245th District Court?

2. What effect the lien has on the rights of the ex-wife.

3. What should happen in order to force the sale of the home?

Smith, the receiver, and the IRS timely filed briefs on the three issues raised by the Court.

## Analysis

*11 U.S.C. § 543*

When a bankruptcy case commences, all non-exempt property of the debtor becomes property of the Bankruptcy Estate. 11 U.S.C. § 541(a). Property of the estate includes property held by a state-court appointed receiver. *Id.* ("Such estate is comprised of all of the following property, wherever located and by whomever held."); *In re Weldon F. Stump & Co.*, 337 B.R. 636, 638 (Bankr. N.D. Ohio 2005). "Upon [a bankruptcy filing], the jurisdiction of the bankruptcy court becomes paramount and exclusive; and thereafter that court's possession and control of the estate cannot be affected by proceedings in other courts, whether state or federal." *Taylor v. Sternberg*, 293 U.S. 470, 472 (1935). A receiver is an officer of the court who appointed him. *Id.* Once a bankruptcy commences, the possession of the state court comes to an end, and that of the bankruptcy court attaches immediately. *Id.*

11 U.S.C. § 543 provides that "[a] custodian . . . may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property." Custodian is defined in the Bankruptcy Code as a "receiver or trustee of any property of the debtor, appointed in a proceeding not under this title." 11 U.S.C. § 101(11). In other words, a receiver appointed in a previous state court proceeding may not take action over property of the estate absent an order from the bankruptcy court or to take action necessary to preserve the subject property.

Section 543(b) imposes a straightforward turnover obligation upon a custodian: the custodian must deliver to the trustee and provide an accounting of any property of the estate

which came into the custodian's possession, custody, or control. *See Foust v. McNeill (In re Foust)*, 310 F.3d 849, 854 (5th Cir. 2002). In the present case, the receiver never took possession of the property. Accordingly, the receiver has no duty to turn over the property or provide an accounting. *Id.* ("Nothing in § 543 indicates a turnover obligation for items no longer is the "possession" or "control" of a custodian at the time he acquires knowledge of a bankruptcy. . . .").

Courts examining the role of a receiver once a bankruptcy case commences have consistently reached the same conclusion: absent an order of the bankruptcy court "[t]he receivership is effectively over and done with; it has come to an end.[1]" *In re Rimsat, Ltd.*, 193 B.R. 499, 502 (Bankr. N.D. Ind. 1996). *See also In re 245 Assoc., LLC*, 188 B.R. 743, 748 (Bankr. S.D.N.Y. 1995) ("[T]he commencement of the case "supersedes" the custodianship."); *In re Northgate Terrace Apartments, Ltd.*, 117 B.R. 328, 331 (Bankr. S.D. Ohio 1990) ("Generally, a state court receivership is terminated upon a bankruptcy filing by the owner of the property."); *In re Bodenheimer, Jones, Szwak & Winchell L.L.P.*, 592 F.3d 664, 670 (5th Cir. 2009) (holding that at the moment of commencement of a bankruptcy case, the role of a state-law custodian is superseded).

The receiver makes two arguments as to why his role as receiver has not been superseded. First, he argues that Smith has no interest in the subject property because the divorce decree reduced Smith's property ownership to a claim to 50% of the proceeds from the sale of the property. However, the actual text of the divorce decree only states that "[t]he house will be sold and the net proceeds divided equally between the parties." (ECF No. 75-1 at 8). It does not indicate that Smith was no longer the owner of the house. Furthermore, at minimum,

---

[1] The bankruptcy court could continue the receiver's role if, for example, "the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition. . . ." 11 U.S.C. § 543(d)(2). That scenario is not present here.

Smith holds a possessory interest in the house sufficient to make the house property of the estate. Moreover, at argument on June 21, 2016, the Receiver acknowledged that Smith remained the beneficial owner of at least a 50% interest in the home. *Ramirez v. Fuselier*, 183 B.R. 583, 587 (9th Cir. B.A.P. 1995) ("The automatic stay of Section 362 protects property of the estate in which the debtor has a legal, equitable or possessory interest.").

Second, the receiver argues that the *Rooker-Feldman* doctrine prevents this Court from overturning the decision of the 245th District Court to appoint a receiver. Under the *Rooker-Feldman* Doctrine, a losing party in state court is barred from seeking what in substance would be appellate review of a state court judgment in federal district court. *Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994). If the *Rooker-Feldman* doctrine even survives, it only applies to that narrow situation. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). This Court is not reviewing the correctness of any state court decision. The Court assumes the correctness of the receivership appointment. Nevertheless, § 543 terminates the services of even a properly appointed receiver. Accordingly, *Rooker-Feldman* does not apply.

*Sale of the Subject Property*

Although the authority of the receiver over the property has been terminated, the property nevertheless must be sold. This Court is bound by the divorce decree which ordered the property to be sold and the proceeds split equally between Smith and Myers. The IRS has filed a tax lien over the property pursuant 26 U.S.C. § 6321. Myers' interest in the proceeds is subordinate to the tax lien, as a person receiving property through a divorce decree is not a purchaser and takes the property subject to federal tax liens. *Harris v. United States*, 764 F.2d 1126, 1129 (5th Cir. 1985). Upon sale of the house, the proceeds must be first paid to all creditors holding secured

liens over the property, including the IRS.  The remaining proceeds, if any, will be split equally between Smith and Myers.

Both Smith and the IRS request that the Court give Smith a reasonable period of time to sell the home.  Given Smith's failure to sell since originally ordered in the 2006 divorce decree, the Court will require Smith to sell the house pursuant to a strict timetable.  At the June 21 hearing, a real estate broker informed the Court that she had been retained to sell the property and that it was currently listed for $235,000.  She had received two offers in the range of $200,000 to $220,000.  The broker must provide to the Chapter 13 Trustee copies of any offers received by the real estate broker.  If the house is not sold within 180-days, the asking price must be reduced by 10% every 60 days thereafter until it is sold.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **June 23, 2016.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE